The INTERNATIONAL NICKEL COMPANY, Inc., a corporation, and Marie Runyan, Appellants,

v.

Alex VAUGHN et al., Appellees.

Court of Appeals of Kentucky.

March 3, 1972.

Rehearing Denied June 9, 1972.

Gray, Woods & Cooper, Ashland, James E. Adkins, Catlettsburg, for appellants.

James P. Stavros, Wilson & Stavros, John Simpson, Ashland, Calvin R. Gearhart, Catlettsburg, for appellees.

CULLEN, Commissioner.

In June 1954 Harold M. Runyan and his wife Marie subdivided a tract of land owned by them as joint tenants with right of survivorship. They duly recorded a plat of the subdivision, and a deed of covenants which set forth various restrictions as to the use of the property, including particularly restrictions of all of the lots, except three, to residential use. The subdivision contained 47 lots and three acreage tracts. Between June 1954 and July 1969 the Runyans sold to various purchasers 10 of the lots, all of one of the acreage tracts, and parts of the other two acreage tracts. This left the Runyans owning 36 of the lots and part of two of the acreage tracts. The portions that had been sold consisted of five parcels, each in different ownership.

In July 1969 the Runyans executed an instrument of release of covenants, undertaking to extinguish all of the restrictions upon use of the property in the subdivision. This was in purported compliance with a provision of the original deed of covenants which authorized release of the covenants:

> "by a general instrument in writing * * * signed by the then owners of two-thirds, in number, of the lots in the above blocks, including those owned by Harold M. Runyan and Marie Runyan."

The other owners of land in the subdivision questioned the validity of the release, and the instant action for a declaratory judgment was brought by the Runyans and a company which had contracted to buy the Runyans' property in the subdivision conditioned upon release of the restrictions. The circuit court entered judgment declaring the release to be invalid. The plaintiffs have appealed.

The primary ground on which the circuit court based its decision that the release was invalid was that by a construction of the deed of covenants to give full effect to the purpose to protect purchasers of res-

idential lots from depreciation of the value of their lots by removal of the residential-use restrictions from the rest of the subdivision, the release clause must be construed to limit the Runyans to one vote for their entire ownership, rather than one vote per lot. In effect, the court construed the release clause as reading, "by two-thirds of the owners of the lots."

We can find no justification for the construction employed by the circuit court. We think the release clause plainly and clearly means just what it says, that the release may be accomplished by the "owners of two-thirds, in number, of the lots". The meaning is made doubly clear by the specific inclusion of "those owned by Harold M. Runyan and Marie Runyan," which could have no significance other than to say that the subdividers get to vote the unsold lots the same as any owner of sold lots. The clause is not ambiguous, so there is no occasion to be concerned with rules of construction, or whether the construction should be strict or liberal.

Although appellees' counsel dispute it, and maintain that the appellants have raised a false issue in discussing it, the circuit court's judgment sets forth, as an additional ground for invalidity of the release, an interpretation of the release clause as requiring that the owners of two-thirds of the lots in each separately designated "block" of the subdivision must unite in order to release the restrictions. This interpretation was rested on the fact that the deed of covenants made three separate groupings of lots (by numbers and not by street blocks) in regard to restrictions. Lots 1 through 11 and the three acreage tracts were in the first group; lots 12, 34 and 35 were in the second; and lots 13 through 33 and 36 through 47 in the third.[1] The major difference in the restrictions as to each group was that the first and third groups were restricted to residential use, while in the second group

business use as well as residential use was permitted. The circuit court was of the opinion that this grouping, together with the reference in the release clause to "two-thirds, in number, of the lots *in the above blocks*" (our emphasis), showed the intent that the owners of two-thirds of the lots in *each* "block" must unite in order to release the restrictions. Apparently this was intended by the circuit court to be an alternative construction to the first construction hereinbefore discussed, because if the first construction were correct it alone would invalidate the attempted release without the necessity for any further construction.

It is our conclusion that the alternative construction is equally as incorrect as the initial one. In the first place, to reach that construction the word "each" must be written in, and the word "blocks" in the phrase "two-thirds, in number, of the lots in the above blocks" must be construed to mean groupings of lots instead of being given its normal meaning of street blocks. In the second place, the restrictions obviously were intended for the protection of the entire subdivision as one unit, and there would be no reason to provide for a *subordinate* unit-system vote on the issue of release of the restrictions from the entire subdivision. Nor could it reasonably have been intended that the owners in one "block" could release the restrictions *from that block* and thus destroy the protection enjoyed by the other blocks by the restrictions on that block. If the circuit court's construction were correct, a person who bought two of the three lots in the second restriction group could control the future of the restrictions against the desires of the owners of the other 45 lots and the three acreage tracts. This control could involve putting restrictions *on* as well as taking them off, because the release clause not only authorizes waiver or suspension of restrictions, but also their *revival* by the designated number of owners of lots.

1. All of the sold lots were in the first group. The Runyans owned all of the lots in the second and third groups.

We think the words "in the above blocks" mean simply "in this subdivision."

█ The circuit court further declared that Mr. and Mrs. Runyan, as joint tenants with right of survivorship, constituted only one "owner" within the meaning of the deed of covenants. The significance of that declaration escapes us. If it means that one owner, even though he owned two-thirds of the lots could not execute a release because the release clause requires execution by "owners," it obviously is incorrect.

The judgment is reversed with directions to enter judgment in conformity with this opinion, upholding the validity of the release.

All concur.